UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ZACHARY MILLER                                               PLAINTIFF

vs.                                          CIVIL ACTION NO. 3:21-CV-575-CRS

CITY OF HILLVIEW, et al.                                    DEFENDANTS

<u>MEMORANDUM OPINION</u>

This matter is before the Court on the motion of the defendants, City of Hillview, Christopher Seda, and Jeff Carter, for summary judgment. DN 21. Plaintiff Zachary Miller responded (DN 24) and the defendants replied. DN 27. Also before the Court is the defendants' motion for leave to file a brief in excess of twenty-five pages. DN 20. The matter is now ripe for adjudication. For the reasons stated herein, the motions will be granted.

## I. BACKGROUND

On August 22, 2020, Hillview Police Officer Christopher Seda responded to a report of a stolen trailer. DN 19-2, at PageID # 241. He met with Dugan Thixton, who related that he had previously reported a trailer stolen and had now observed his trailer at another residence. *Id.* at 243. Thixton provided Seda with a certificate of origin evidencing his ownership of the trailer, which contained the trailer's Vehicle Identification Number ("VIN"). *Id.* at 242; DN 19-1, at PageID # 153.

Officer Seda followed Thixton to a residence at 555 Blossom Road to investigate. DN 19-2, at PageID # 244. In the yard the pair found a Dodge pickup truck sitting atop Thixton's alleged trailer. *Id.* at 246. They encountered Texill Seaton in front of the house, and he informed Seda that he was there waiting to purchase the Dodge truck. *Id.* at 248, 252-53.

Officer Seda matched the VIN on the trailer to Thixton's documentation. *Id.* at 246. Seda called Bullitt County Dispatch to run an inquiry on the VIN and learned the trailer had been reported stolen in 2017. *Id.* Seda then called his partner, Officer Jeff Carter, and asked for additional officers to respond to the scene. *Id.* at 247. Carter came to the residence to assist Seda in the investigation. *Id.* at 249.

Zachary Miller arrived at 555 Blossom Road and learned from Thixton that the trailer had been reported stolen. *Id.* at 249–50. Miller told Seda that he had bought the trailer from his cousin, Danny Scott, six months ago. *Id.* at 250–51. Miller called Scott, who soon arrived at the scene of the investigation. *Id.* at 258. Scott stated that he had purchased the trailer from another individual and had then sold it to Miller. *Id.* Neither Scott nor Miller provided documentation of the transactions. *Id.* at 261. Another Miller relative also arrived at the scene with Miller's son. *Id.* at 273, 277; DN 19-3, at PageID #359, 364.

After discussing the matter with a supervising officer, Carter instructed Seda to arrest Miller for felony receiving stolen property. *See* DN 19-3, at PageID # 358–60. Seda arrested Miller and placed him in his squad car. DN 19-2, at PageID # 274-75. After completing the citation, Seda transported Miller to the Bullitt County Detention Center. *Id.* at 277, 279. Miller was released from custody two hours after the initial arrest. DN 19-1, at PageID # 146.

Thixton took possession of the trailer, and later sold it to Miller. *Id.* at 166–67; DN 19-2, at PageID # 281. After the sale Thixton declined to pursue charges against Miller. DN 19-2, at PageID # 296. By agreed order, Miller's charge was amended to a misdemeanor and dismissed with prejudice on October 16, 2022. DN 1-2, at PageID # 31.

On August 20, 2021, Miller filed this action in Bullitt Circuit Court, alleging § 1983 claims as well as various state law claims. Miller alleges claims against Seda and Carter for illegal

seizure, malicious prosecution, conspiracy to deprive Miller of his constitutional rights, and for common law false arrest and malicious prosecution. DN 1-2. Miller also alleges claims against the City of Hillview ("Hillview") for § 1983 municipal liability; common law negligent hiring, retention, or supervision; and vicarious liability. *Id.* The defendants removed the case to this Court on September 16, 2021. DN 1. This Court has federal question jurisdiction over the § 1983 claims and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §§ 1331, 1343, and 1367(a). The defendants now move for summary judgment on all claims.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of explaining the basis for its motion and demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). That burden may be satisfied only by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish" a genuine dispute. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Should the movant meet its burden, the nonmovant must produce evidence demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 324. Summary judgment is proper where a party bearing the burden of proof at trial fails to establish an essential element of their case. *Id.* at 322.

On summary judgment, courts must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007) (quoting *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962)).  Even so, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the material

facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986).  The nonmovant "may not rest upon the mere allegations or denials

of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256.

## III.  DISCUSSION

As a preliminary matter, the Court will grant the defendants' unopposed motion for leave

to file a memorandum in support of the motion for summary judgment in excess of twenty-five

pages.  DN 20.

### A.  Fourth Amendment Claims

Section 1983 imposes civil liability on those who, under color of state law, deprive others

of the "rights, privileges or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

"A plaintiff suing under § 1983 must establish [1] that he was denied a constitutional right, and [2]

that the deprivation was caused by a defendant acting under color of state law."  *Carl v. Muskegon*

*Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).  "The first inquiry in any § 1983 suit, therefore, is whether

the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  *Baker v.*

*McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692, 61 L. Ed. 2d 433 (1979).

Qualified immunity shields "government officials performing discretionary functions . . .

from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).  The plaintiff "bears

the burden of overcoming the qualified immunity defense.  At the summary judgment stage, the

plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 608 (6th Cir. 2015) (internal citations omitted).

A constitutional right is clearly established if "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *D.C. v. Wesby*, 199 L. Ed. 2d 453, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations omitted). This requires that "a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply" and must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* at 590

### 1. Constitutional Violation

Count I of Miller's complaint alleges that Seda and Carter "deprived [Miller] of his rights under the Fourth Amendment . . . to be free from unreasonable seizure" because there was no probable cause for his arrest. DN 1-2, PageID # 15. Miller claims in Count II that Seda and Carter initiated a criminal prosecution against him which "lacked probable cause" and violated his rights under the Fourth Amendment "when they maliciously prosecuted the Plaintiff." *Id.* at 16. The defendants argue that Miller has failed to demonstrate a constitutional violation because Miller has not established that there was no probable cause for the arrest.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless arrest in public qualifies as a reasonable 'seizure' so long as officers have probable

cause that the arrestee committed a crime." *United States v. Baker*, 976 F.3d 636, 642 (6th Cir. 2020), *cert. denied,* 209 L. Ed. 2d 513, 141 S. Ct. 1750 (2021).

"The Sixth Circuit recognise[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal quotation marks and citation omitted). To succeed on a malicious prosecution claim, the plaintiff must establish four elements: "(1) the defendant made, influenced, or participated in the decision to prosecute; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (internal quotation marks and citation omitted). "As a matter of substance, the Fourth Amendment prohibits only those pretrial seizures (or prosecutions) that lack *probable cause*, and § 1983 grants qualified immunity to defendants who mistakenly but reasonably conclude that probable cause exists." *Id.* at 607. Thus, Miller must set forth facts from which a reasonable jury could conclude that the arrest lacked probable cause to establish both claims.

The Supreme Court has interpreted probable cause for an arrest as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979). "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial." *Harris v. Bornhorst*,

513 F.3d 503, 511 (6th Cir. 2008).  Courts "look to the totality of the circumstances" to evaluate probable cause for an arrest.  *Id.*  Probable cause does not require officers to possess evidence sufficient to prove every element of an offense.  *See Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972).  A later adjudication of the arrestee's innocence does not invalidate an "arrest based upon then-existing probable cause."  *Criss*, 867 F.2d at 262.

Seda arrested Miller for the felony offense of receiving stolen property.  Kentucky Revised Statutes (KRS) § 514.110(1) provides that: "[a] person is guilty of receiving stolen property when he or she receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen."  Miller argues that because he told the officers that he had purchased the trailer, there was no evidence that he had knowledge that the trailer was stolen and thus the officers lacked probable cause.

The defendants argue that possession of stolen property alone is enough to support probable cause to arrest.  In *United States v. Baker*, the Sixth Circuit examined the probable cause for an arrest warrant issued under KRS § 514.110.  976 F.3d 636 (6th Cir. 2020), *cert. denied,* 209 L. Ed. 2d 513, 141 S. Ct. 1750 (2021).  In *Baker*, the arrestee argued that an affidavit for an arrest warrant did not support probable cause because it included no information concerning whether the arrestee knew that the property was stolen.  *Id.* at 639, 648.  Though *Baker* involved the application of the exclusionary rule, and the Court chose not to decide the probable cause issue, the Sixth Circuit found that because "a jury can permissibly find guilty knowledge beyond a reasonable doubt based on a one's possession of stolen goods, an officer would not act recklessly in believing that [the arrestee's] possession of the [stolen property] created a substantial chance that he knew (or should have known) it was stolen."  *Id.* at 648 (internal quotation marks and citation omitted); *see also United States v. Durham*, No. 3:21-CR-12-BJB, 2022 WL 1785294, at *3 (W.D. Ky. June 1, 2022)

(finding that knowledge of a suspect's possession of stolen property alone supported a finding of probable cause). The *Baker* Court explained that "[w]hile intent is an element of the crime which must be proved at trial, it is not necessary in order to establish probable cause to arrest." 976 F.3d at 648–49 (quoting *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983)).

Miller argues that his innocent explanation for his possession of the trailer demonstrated that he lacked knowledge that the trailer was stolen, and thus there was no probable cause. In *Criss v. City of Kent*, a suspect argued there was no probable cause for his arrest under Ohio's receiving stolen property offense because officers failed to investigate his "innocent explanation of his association" with the stolen property. 867 F.2d at 263. The Sixth Circuit found that an officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Id.* "To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" *Id.* The Court concluded that, while a suspect's innocent explanation is a factor that law enforcement officers may consider, there was no duty for arresting officers to investigate every claim of innocence by a suspect. *Id.*

Miller cites to *Ahlers v. Schebil* for the proposition "that officers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." 188 F.3d 365, 372 (6th Cir. 1999) (emphasis omitted). In *Ahlers*, a detainee accused a corrections officer of sexual assault. *Id.* at 367. The corrections officer argued that investigators had failed to turn over potentially exculpatory evidence prior to a magistrate judge's probable cause determination. *Id.* at 370. The Court determined that the accusation alone was enough to establish probable cause to

8

arrest. *Id.* In *Sampson v. Village of Mackinaw City*, the Sixth Circuit explained that the holding of *Ahlers* was that "'[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused'; [and the *Ahlers* Court] explained that the officer 'is under no obligation to give any credence to a suspect's story or alibi.'" 685 F. App'x 407, 414 (6th Cir. 2017) (quoting *Ahlers*, 188 F.3d at 371). Therefore, *Ahlers* does not support Miller's contention that the officers had a duty to believe or investigate Miller's innocent explanation for his possession of the trailer.

Miller argues that this case differs from the facts of *Criss* and *Baker* because his cousin Scott corroborated the innocent explanation for his possession of the trailer. DN 24, at Page ID # 449–50. However, he provides no authority to support the contention that a family member supporting a suspect's explanation for the possession of stolen property negates probable cause, or that this is a materially different circumstance from a suspect himself providing an innocent explanation. While the officers could consider the innocent explanation, they had no duty to investigate the claim of innocence where the facts as initially discovered established probable cause.

Finally, Miller argues that because the trailer was stolen three years earlier it was not recently stolen. Possession of recently stolen property can establish *prima facie* evidence of a suspect's knowledge under KRS § 514.110(2). But probable cause does not require *prima facie* evidence of a crime. The Sixth Circuit examined the temporal element of KRS § 514.110 in *Baker*. In *Baker*, twenty-one months had elapsed between the theft of the property and the application for the arrest warrant. 976 F.3d at 648. The Court found that "an officer would not act recklessly in believing that [a suspect's] possession of the [stolen property] created a substantial chance he knew (or should have known) it was stolen." *Id.* at 648. The Court noted that possession of stolen

property was "sufficient to justify a finding of probable cause without separately discussing any temporal-proximity element." *Id.* Put another way, the possession of stolen property supports a finding of probable cause without consideration of when the property was stolen.

The officers were not required to believe Miller's innocent explanation and did not have a duty to investigate his claims of innocence where possession of the stolen property supplied probable cause. Miller has failed to set forth evidence from which a jury could reasonably find that there was no probable cause to arrest him for felony receiving stolen property. Therefore, Miller has failed to establish an element necessary to prove an illegal seizure or malicious prosecution Fourth Amendment violation.

## 2. Clearly Established

Even if Miller could establish that the officers lacked probable cause for the arrest, he still has the burden prove that existing precedent clearly established that an arrest under such circumstances violated the Fourth Amendment. Because probable cause is fact dependent, the clearly established standard requires that "existing precedent must place the lawfulness of the particular arrest beyond debate." *D.C. v. Wesby*, 199 L. Ed. 2d 453, 138 S. Ct. 577, 590 (2018) (internal quotation marks and citation omitted). "In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which [the particular officer] was confronted . . . constitute[d] probable cause." *Id.* (internal quotation marks and citation omitted). The plaintiff must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017)).

As previously discussed, Sixth Circuit precedent demonstrates that possession of stolen property alone can support probable cause, and that officers do not have a duty to investigate a

suspect's innocent explanation for possession of stolen property if the underlying facts supply probable cause. Miller has provided no authority to support his contention that a family member's corroboration of a suspect's innocent explanation will negate probable cause. Miller has not identified a single case "finding a Fourth Amendment violation under similar circumstances." *Id.* at 591 (internal quotation marks and citation omitted). Therefore, even if the officers lacked probable cause for arrest under these facts, "the officers are entitled to qualified immunity because they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)). Therefore, Seda and Carter are entitled to qualified immunity and summary judgment in their favor on Counts I and II.

### B. Civil Conspiracy

Count III of the complaint alleges that Seda and Carter were involved in a conspiracy to deprive Miller of his constitutional rights. *Id.* at 17–18. The Sixth Circuit has explained this claim:

> A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action. To prevail on a civil conspiracy claim, [the plaintiff] must show that (1) a 'single plan' existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury' to [the plaintiff].

*Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011) (internal quotation marks and citations omitted). Civil conspiracy claims will not survive summary judgment if they contain only "vague and conclusory allegations unsupported by material facts." *Id.* at 603.

The defendants argue that Miller has failed to demonstrate that the officers had an agreement, plan, or conspiratorial objective to deprive Miller of his constitutional rights. Miller did not address this argument, or this claim, in his response. Beyond conclusory allegations in the

complaint, Miller has not set forth evidence to establish the elements of a § 1983 conspiracy claim. Therefore, summary judgment will be granted on Count III.

### C. *Monell* Claim

In Count IV, Miller asserts a *Monell* claim against Hillview for deprivation of civil rights under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under *Monell*, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, local governments may be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.

Hillview argues that Miller has failed to identify sufficient evidence to demonstrate *Monell* liability under either a failure to train, failure to supervise, or policymaker ratification theory. DN 21-1, at PageID # 413–14. Miller alleges that Hillview had a policy of failing to "train, supervise and discipline officers on the requirements concerning the warrantless arrest of citizens without probable cause." DN 24, at PageID # 454. However, the only evidence he points to is Seda's deposition testimony on continuing training: "Q: When's the last time you had any continuing training about arresting people for felony offenses? A: I don't have any training for arresting people."[1] DN 19-2, at PageID # 307. Miller argues this is evidence of Hillview's failure to train. DN 24, at PageID # 454.

In *City of Canton, Ohio v. Harris*, the Supreme Court held that a municipality may be found liable for failure to train "only where the failure to train amounts to a deliberate indifference to the

---

[1] Seda's answer refers to continuing training. Seda testified that he had received a great deal of police training, including training on City of Hillview Police Department policies. *See* DN 19-2, at PageID # 210–11, 229. Seda repeatedly affirmed that he had received training on the department's felony arrest policy. *Id.* at 230, 232.

rights of persons with whom the police come into contact." 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). The Court held that proof "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city" under § 1983. *Id.* at 390. The Sixth Circuit has explained the elements of the failure to train claim:

> In order to show that a municipality is liable for a failure to train its employees, a plaintiff must establish that: 1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury.

*Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (internal quotation marks and citations omitted).

Miller has only identified the potentially unsatisfactory training of one officer, which is insufficient to establish municipal liability. Miller has failed to put forth evidence to prove the elements of the failure to train claim, or any other theory of *Monell* liability. Therefore, Hillview is entitled to summary judgment on the *Monell* claim.

### D. State law claims

#### 1. False Arrest

In Count V, Miller alleges that Seda and Carter arrested him "without legal authority or probable cause," and these actions "constitute the tort of false arrest." DN 1-2, at PageID # 20. Under Kentucky law, the tort of false arrest by a police officer is synonymous with the tort of false imprisonment. *Lexington-Fayette Urb. Cnty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. Ct. App. 1977). "A law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual." *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). "An action for false imprisonment may be maintained where the imprisonment is without legal authority." *Smith v. Stokes*, 54 S.W.3d 565, 567 (Ky. Ct. App. 2001) (quoting *SuperX Drugs of Kentucky, Inc. v. Rice*, 554 S.W.2d 903, 907 (Ky. Ct. App. 1977)). An officer has legal authority

to arrest without a warrant where he has "probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." *Dunn*, 226 S.W.3d at 71 (citation omitted).

Kentucky "law affords qualified immunity to the discretionary acts of peace officers performed in an official capacity, thereby shielding them 'from [] liability for good faith judgment calls made in a legally uncertain environment.'" *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). To overcome qualified immunity, the plaintiff must "show that a peace officer acted in bad faith when making an on-the-spot judgment call, the complainant must demonstrate that the officer '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate' the complainant's rights or that the officer" acted with malicious intent. *Id.* (quoting *Yanero*, 65 S.W.3d at 523). "[T]he qualified official immunity analysis under Kentucky law 'tracks the inquiry for objective reasonableness and qualified immunity' under federal law." *Scheffler v. Lee*, 752 F. App'x 239, 244 (6th Cir. 2018) (quoting *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 425 (6th Cir. 2017)).

Seda and Carter argue that Miller has failed to establish the false arrest claim because he has not demonstrated that the officers lacked probable cause for the arrest. Miller did not substantively address the state law false arrest claim in his response to the defendants' motion. Because the Kentucky qualified immunity tracks the federal standard, and the Court has found the officers are entitled to qualified immunity under the federal standard, the officers are entitled to qualified immunity on the false arrest claim. Therefore, summary judgment will be granted on Count V.

## 2. Malicious Prosecution

In Count VI, Miller alleges that his "criminal proceeding was instituted without probable cause and with malice aforethought" and that Seda and Carter's conduct "constitute[s] the tort of malicious prosecution."  DN 1-2, at PageID # 21.  In *Martin v. O'Daniel*, the Kentucky Supreme Court explained the elements of a malicious prosecution claim:

> A malicious prosecution action may be established by showing that:
> 1) the defendant initiated . . . a criminal . . . proceeding against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . .;
> 4) the proceeding . . . terminated in favor of the [plaintiff] . . .; and
> 5) the plaintiff suffered damages as a result of the proceeding.

507 S.W.3d 1, 11–12 (Ky. 2016), *as corrected* (Sept. 22, 2016).  Kentucky law requires "strict compliance with the prerequisites for maintaining a malicious prosecution action."  *Id.* at 7.  "Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim."  *Id.* at 5.

Carter and Seda argue that Miller's malicious prosecution claim must fail because there is no evidence to support a finding that officers acted with malice or that they lacked probable cause.  Miller did not substantively address this argument in his response and identified no evidence from which a reasonable jury could find that the officers acted with malice, a required element of the claim.  *See id.* at 11 (defining malice).  Thus Miller has failed to produce evidence of a genuine dispute and summary judgment will be granted on Count VI.

## 3.  Negligent Hiring, Retention or Supervision

Count VII of Miller's complaint alleges that the City of Hillview "knew or reasonably should have known that its employees, [Seda and Carter] were unfit for employment as police officers" and that Hillview's "placement, retention, or supervision" of the officers "created an

unreasonable risk of harm to [Miller]." DN 1-2, at PageID # 22. The complaint also alleges that Hillview "knew or should have known of the risk that the employment created to [Miller]." *Id.*

To establish a Kentucky negligent hiring and retention claim, a plaintiff must prove two elements: "(1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000). Kentucky law also recognizes the tort of negligent supervision. *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). This tort allows an employer to be held "liable for a tort committed by its employee if the employer did not reasonably supervise the employee." *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694 (W.D. Ky. 2001). But "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker*, 350 F.3d at 517.

Hillview argues that Miller has failed to establish that his rights were violated or that the officers were not adequately trained or supervised. Miller failed to substantively address this argument and did not identify evidence to support a finding the officers were unfit for their position, or that Hillview knew or should have known that the officers were unfit for their positions. Thus, Miller has not produced evidence to satisfy the elements of the negligent hiring and retention claim. Miller also failed to identify evidence to support a finding that the officers were not reasonably supervised, and a reasonable jury could not find that Miller had established a negligent supervision claim. Therefore, summary judgment will be granted as to the negligent hiring, retention, or supervision claim.

16

### 4. Vicarious Liability

In Count VIII, Miller alleges that Hillview "is vicariously liable for the tortious conduct of Officer Seda and Lieutenant Carter." DN 1-2, at PageID # 23. Hillview argues that because Seda and Carter are not liable for any tortious conduct, Hillview cannot be vicariously liable. DN 21-1, at PageID # 424. Miller did not address this claim in his response.

"[V]icarious liability is not possible without primary liability." *Haugh v. City of Louisville*, 242 S.W.3d 683, 687 (Ky. Ct. App. 2007). Because the Court will grant summary judgment on the tort claims against Seda and Carter, there is no primary liability for which Hillview may be held vicariously liable. Therefore, the Court will grant summary judgment on the vicarious liability claim.

Because summary judgment will be granted on all claims against Hillview, the Court does not reach Hillview's arguments regarding the availability of punitive damages against a municipality.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the defendants' motion for summary judgment. A separate order will be entered this date in accordance with this opinion.

January 4, 2023

Charles R. Simpson III, Senior Judge
United States District Court

17